IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROCHELLE SYLVA-KALONJI, | ( |
| **Plaintiff,** | ( |
| vs. | (   CIVIL ACTION NO.  08-0207-KD |
| **BOARD OF SCHOOL COMMISSIONERS** | ( |
| **OF MOBILE COUNTY** | |
| | ( |
| **Defendant.** | |

**ORDER**

This matter is before the court on defendant, Board of School Commissioners of Mobile

County's ("Board")[1], motion for summary judgment, and brief and evidentiary materials filed in

support (doc. 20), plaintiff's response in opposition, evidentiary materials and statement of

disputed facts (docs. 25, 26, 27) and defendant's reply brief (doc. 32).

I.      Procedural History

        Plaintiff's complaint alleges violations under Title VII of the Civil Rights Act of 1964, as

---

[1] In plaintiff's statement of facts she refers to defendant as the "Mobile County Board of
Education ("MCBE")."  (Doc. 27) and in her complaint states that "[d]efendant Board of School
Commissioners of Mobile County is the county board of education for Mobile County.  (Doc. 1
at ¶ 3) In answer to the complaint and in the brief in support of its motion for summary
judgment, defendant refers to itself as "Board of School Commissioners of Mobile County"
(Docs. 4, 20) Defendant describes the Board of School Commissioners of Mobile County as "the
legal entity which operates the Mobile County Public School System."  (Doc. 20 at ¶ 2)  The
court will refer to defendant in this order as the "Board of School Commissioners of Mobile
County" or the "Board."

1

amended, 42 U.S.C. § 2000e, et seq., including §§ 2000e-3(a) and 2000e-5(f), 42 U.S.C. Section

1983, 42 U.S.C. Section 1988, and the Civil Rights Attorneys' Fees Awards Act of 1996.[2] (Doc.

1)  Plaintiff alleges, in sum, that she has been denied an increase in her wages based on her race.

Specifically, plaintiff alleges that, with the knowledge of her supervisors,  she "has been

performing duties well beyond those formerly and normally performed by an Assistant

Certification Clerk" and was advised that her position would be up-graded to that of "Human

Resources Data Specialist" and raise her pay to pay grade CT4  "when or shortly after the central

office staff moved from Barton Academy in downtown Mobile to its newer buildings in Mobile

County" which was in May, 2007.  (Id. at ¶ ¶ 7,8)  Plaintiff contends that after the office staff

was moved she was told that "because of financial difficulties, defendant had adopted a policy,

rule, or practice that prohibited up-grades in position or non-mandatory raises in pay, and

resultingly, it would not up-grade her position and provide her a concomitant raise in pay." (Id.

at ¶¶ 9, 10)  Plaintiff maintains that after this occurred, "one or more white employees received

up-grades in their positions and/or non-mandatory raises in pay, notwithstanding the financial

difficulties defendant was supposedly encountering."  (Id. at ¶ 10)

In answer to the complaint, defendant denies that its actions were discriminatory but,

rather, were based on legitimate business reasons.  On March 26, 2009 defendant filed the instant

motion for summary judgment on plaintiff's claims on the grounds, in sum, that plaintiff has

failed to identify a comparator and thus cannot establish a prima facie case of discrimination.

The motion has been fully briefed and is now ripe for the court's consideration.

---

[2]  42 U.S.C. § 1988 gives the court discretion, in cases brought under § 1981 and § 1983,
to award the prevailing party a reasonable attorney's fee.  Hendrix v. Chambers, 2009 WL
792474 (M. D. Ala., March 23, 2009) (awarding attorney's fees to prevailing defendant)

II.    <u>Factual Background</u> [3]

1.    Plaintiff, Rochelle N. Sylva-Kalonji, is an African American female presently employed by the Board of School Commissioners, as an "Assistant Certification Clerk," which carries a pay grade of CT3.  (Doc. 1, Complaint at ¶ 4)

2.    Ms. Kalonji was initially hired by the Board in 1995 as a school clerk/registrar at Griggs Elementary School.  In 1996 Kalonji was hired as a Rank III clerk in the Human Resources Division. (Doc. 26, Exhibit 27, Deposition of Rochelle N. Sylva-Kalonji, p. 16)   In 1998, she was appointed to the position of Application Clerk. (<u>Id.</u>)

3.    In July 2003, Ms. Kalonji was promoted to the position of Assistant Certification Clerk. (Kalonji Dep.,  pp. 18-19) With the promotion, Ms. Kalonji moved from a Rank II to Rank I. (<u>Id.</u> pp. 19-20, 69) Shortly after that promotion, Ms. Kalonji's classification was changed from Rank I to a CT-3. (<u>Id.</u> pp. 20-21)

4.    On or about November 18, 2003, Ms. Kalonji filed a grievance regarding her classification and pay based on the increase of duties and restructuring of her position as Assistant Certification Clerk. (Kalonji, Dep., pp. 29-30, 67-68; Doc. 26, Exhibits 11, 14) The grievance was ultimately denied.[4]

---

[3]  As it is required to do when resolving a motion for summary judgment, the Court has construed the factual allegations in a light most favorable to the plaintiff.  <u>Miller v. King</u>, 384 F.3d 1248, 1258-59 (11th Cir. 2004)(When ruling on a motion for summary judgment, the court "must view all evidence and all factual inferences therefrom in the light most favorable to the non-moving party.")

[4]  Pauline Scarborough, Executive Director of Human Resources and Ms. Kalonji's direct supervisor, presided over the Step I hearing. (Doc. 26, Exhibit 28, Deposition of Pauline Scarbrough, pp. 78, 82; Exhibit 12) The grievance was denied and plaintiff filed an appeal. After conducting a hearing on March 18, 2004 the hearing officer denied the appeal, but noted that "that Board Policy GCBB was not followed."  (<u>Id.</u>)

5.      In May of 2004, Ms. Kalonji was asked to complete a position questionnaire relating to the position of Assistant Certification Clerk. (Kalonji Dep. pp. 35-38). Ms. Kalonji's supervisor agreed with plaintiff's assessment of her job duties and responsibilities and advised plaintiff that she would recommend that Kalonji's position be upgraded. (Doc. 26, Exhibit 28, Deposition of Pauline Scarbrough, pp. 54-55, 56; Doc. 26, Exhibit 30 -Affidavit of Rochelle Sylva- Kalonji)

6.      Plaintiff's supervisor (Scarbrough) voiced her opinion to Paul E. Tate, Jr., Superintendent of Human Resources, that she believed Ms. Kalonji's position should be reclassified, or at least upgraded. (Scarbrough Dep., pp. 55-56).

7.      In April, 2006, MGT of America (MGT) was hired by the Board to conduct a classification and salary study. (Scarbrough Dep., pp. 57-58, 59-60, Exhibit 8) MGT found that MCBE's "current system classifies all Human Resource Clerks the same regardless of responsibilities" and it recommended different levels of clerks to reflect their assigned responsibilities. (Doc. 26, Exhibit 8, Section 6-2, 6-5). One of the recommendations was that Human Resource Clerks salary classification be increased to a CT-3. No recommendation was made as to an increase in the salary of the Assistant Certification Clerk position. (Id.)

8.      In May, 2006, a grievance was presented by both classified and certified employees. (Kalonji Affidavit) Ms. Kalonji was a class member both as a classified employee and a "singleton position." (Id.) [5] On or about January 5, 2007, Ms. Kalonji filed a grievance

---

[5] Plaintiff describes a "singleton position" as one in which the assigned duties are unique. (Doc. 25 at p. 2, n.1) Defendant concedes that plaintiff is the only employee to hold the title "Assistant Certification Clerk," but maintains that "[b]oth Veronica Robinson and Mavis

appeal addressing concerns that the new Salary Schedule for Human Resource Clerks ignored the level of effort, skill and responsibility of a given position. (Doc. 26, Exhibit 13, p. 4) Both Betty Hand, plaintiff's alleged comparator, and Ms. Kalonji were parties to the grievance (Doc. 26, Exhibit 13, p. 4; Doc. 26, Exhibit 23- Deposition of Betty Hand, pp. 40-41, 43) Both Mrs. Hand and Ms. Kalonji's grievances were denied. (Kalonji Affidavit; Hand Dep. p. 41)

9.      In May 2007 the Board moved its central office to West Mobile and shortly thereafter began to restructure the Human Resources Office.  On November 14, 2007, Ms. Kalonji submitted, to then Board Superintendent Harold Dodge, a written request to upgrade her position.  (Doc.26, Exhibit 15)

10.      Ms. Kalonji's duties are primarily data entry which involves inputting information into the school board's computer regarding placement of certified employees.[6] Currently, two other employees, Veronica Robinson and Mavis Hayes do similar work to Ms. Kaljoni.[7]

11.      Betty Hand, a white female, was hired as the Board's Legal Secretary in 1989. (Hand Dep., p. 11).  From 1989 until approximately 2000, Mrs. Hand worked directly for the Board's in-house counsel.  In the position of Legal Secretary, Mrs. Hand is tasked with: (1)

---

Hayes perform similar duties as Ms Kalonji" and "[w]hile they do not hold the same job title, their job duties are interchangeable."  (Doc. 32 at pp. 1-2)

[6] Plaintiff argues that her job duties were increased in 2008 when she and three other employees were assigned to enter data in the NEXTGYN system. (Kalonji Dep., pp. 54, 61)

[7] Ms. Robinson performs the same function for classified employees.  Certified employees are defined as those employees who have certificates such as Teachers, Assistant Principals and Principals.  Classified employees are identified as bus drivers, janitors, cafeteria workers, etc.

handling legal correspondence; (2) accepting subpoenas, lawsuits and other legal process; (3) preparing letters for mandatory transfers[8]; (4) over seeing delivery of official notifications; (5) handling policy questions; (6) preparing Board agenda items concerning policy issues; (7) maintaining systems for tracking deadlines/time lines for appeals, other legal proceedings; (8) processing unemployment claims and (9) preparing and over seeing grievances.  (Id. at pp. 12-17, 26-28, 33)

12.    In 2000, the Board eliminated the in-house counsel position and since that time Mrs. Hand's supervisor has been the Superintendent of the School Board.  (Id.)  Mrs. Hand has remained the Legal Secretary, but also assumed the duties of Retirement Clerk in the Human Resource Office.   (Hand Dep., pp. 14-15, 18- 19, 22-23, 44-45; Scarbrough Dep., p. 74).  The duties of Retirement Clerk include: (1) dealing with employees who are retiring, including coordinating benefits with the State Retirement System; (2) fielding inquiries from employees seeking information on retirement benefits and researching employment histories and (3) serving as a liaison between the Board and the State Retirement System.  (Id.) [9]

13.    In October 2007, Mrs. Hand's position was re-classified from CT-3 to CT-4.  The re-classification was contained in the Board's 2007-2008 salary schedule which was first proposed on July 24, 2007 and approved on September 25, 2007.  (Doc. 20,  Exhibit 12)

14.    Ms. Kalonji filed a charge of discrimination with the EEOC on January 16, 2008, identifying Mrs. Hand as the Caucasian employee who was treated differently than herself. (Doc.

_____

[8]  Mrs. Hand stated in her deposition that "terminations and mandatory transfers and policy, and all of those things are kind of seasonal."  (Hand Dep., p. 14)

[9]  Mrs. Hand stated that she continues to perform the "legal functions" first.  (Hand Dep., p.15)

26, Exhibit 20)  On January 24, 2008 the EEOC issued a dismissal and Notice of Rights, with the following finding: "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge." (Doc. 26, Exhibit 21)

III.    Summary Judgment Standard

        Summary judgment should be granted only if the record establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).

This standard applies equally to cases involving allegations of job discrimination.  The

Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used

in employment discrimination cases because they involve issues of motivation and intent.

> While acknowledging that questions of fact in job discrimination cases are "both
> sensitive and difficult" ... the Supreme Court has told us that "none of this means
> that trial courts or reviewing courts should treat discrimination differently from
> other ultimate questions of fact." And quite recently, the Court rejected a rule
> which would have made it easier for job discrimination plaintiffs to get their case
> to a jury, explaining that "[t]o hold otherwise would be effectively to insulate an
> entire category of employment discrimination cases from review under Rule 50,
> and we have reiterated that trial courts should not treat discrimination differently
> from other ultimate questions of fact." The long and short of it is that the
> summary judgment rule applies in job discrimination cases just as in other cases.
> No thumb is to be placed on either side of the scale.

Chapman v. AI Transport, 229 F.3d 1012, 1026 (11th Cir.2000) (internal citations omitted);

Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004).


IV.    Discussion[10]

Defendant moves for summary judgment on the grounds, in sum, that plaintiff has failed

to present a prima facie case of discrimination.  Specifically, defendant maintains that plaintiff

---

[10]  The court's analysis of plaintiff's Title VII claim likewise applies to her Section 1983 claim.  See Adams v. Cobb County School Dist., 242 Fed.Appx. 616 (11th Cir. 2007) ("We do not treat Adams's § 1983 (equal-protection based) failure-to-promote claim against the District separately from his Title VII failure-to-promote claim against the District. "Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical ... [and] we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims.") (internal citations omitted); Mitchell v. Pope, 189 Fed. Appx. 911, 913 n. 2 (11th Cir. 2006) (citing Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n. 16 (11th Cir.1982)); Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir.1985) (stating that where a plaintiff predicates liability "under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical ... [and] we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims.").

has failed to identify a comparator with whom she is similarly situated.   Defendant further

argues that even if plaintiff can sustain a prima facie case of wage discrimination, defendant has

articulated a legitimate non-discriminatory reason for salary increase for Mrs. Hand – namely,

that Mrs. Hand was reclassified from a CT3 to a CT4 position.

Title VII provides that "[i]t shall be an unlawful employment practice for an

employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex or national origin." 42

U.S.C.A. § 2000e-2(a) (West 2003).   "There are two types of discrimination actionable under

Title VII, disparate treatment and disparate impact ." Spivey v. Beverly Enters., Inc., 196 F.3d

1309, 1312 (11th Cir.1999).  A disparate treatment suit is one in which an employee alleges that

the employer "treats some people less favorably than others because of their race, color, religion,

sex, or national origin." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97

S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977). Disparate treatment can occur in a variety of

circumstances, including hiring, discipline, promotion, and working conditions.

Ms. Kalonji alleges that she has been treated in a disparate manner to that of a similarly

situated white co-worker (Betty Hand) with regard to pay and compensation.  Plaintiff concedes

that she has no direct evidence of this alleged discrimination, accordingly, in analyzing

plaintiff's claim, the court will employ the familiar *McDonnell-Douglas* burden shifting analysis.

 McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In order to establish a prima facie case of wage discrimination, the plaintiff must

demonstrate that: (1) she is a member of a protected class; (2) she received a lower salary than similarly situated comparators outside the protected class, and (3) she was qualified to receive the higher salary.  Cooper v. Southern Co., 390 F.3d 695, 734-35 (11th Cir.2004) *overruled on other grounds*; Ash v. Tyson Foods, Inc., 546 U.S. 454, 457, 126 S.Ct. 1195, 1197, 163 L.Ed.2d 1053 (2006).  See also Smellie v. Florida Dept. Of Corrections, 2009 WL 1101364 (11th Cir., April 24, 2009) (reiterating elements for prima facie case of disparate treatment); Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir.1994) (stating that to establish a  prima facie case of disparate pay, a plaintiff must show she occupies a position similar to that of a higher paid employee who is not a member of her protected class).

    If plaintiff is successful in establishing a prima facie case, the burden then shifts to the employer to show a legitimate and non-discriminatory reason for the employment decision. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir.2004).  This burden has often been described as "exceedingly light" and as a burden of production, not of persuasion. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir.1997).  If this burden is met, then the presumption of discrimination is rebutted and the burden then shifts back to the plaintiff to show that the proffered reason was merely a pretext for discrimination. Wilson, 376 F. 3d at 1087.

    Ms. Kalonji, an African-American woman, is a member of a protected class.  Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1290 (11th Cir.1998) ("As an African-American, [the plaintiff] is a member of a protected class.").  The third prong is also met since the defendant does not contend that Ms. Kalonji is not qualified to receive the upgrade in her current position. Rather, the dispute centers on the second prong of the prima facie case - whether plaintiff was paid less than a similarly situated comparator.

10

The Eleventh Circuit has held that a plaintiff must show that the employee with whom he
or she seeks comparison is "similarly situated in all relevant respects besides race [or sex], ...
since '[d]ifferent treatment of dissimilarly situated persons does not violate' civil rights laws."
Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1273 (11th Cir.2004); Holifield v. Reno, 115
F.3d at 1562 (A plaintiff must establish that her comparators are "similarly situated in all
relevant aspects.") To be "similarly situated", a comparator and a plaintiff must have in common
"similar levels of experience or education." Cooper, 390 F.3d at 745; see also Mack v. St Mobile
Aero. Eng'g, Inc., 195 Fed. Appx. 829, 843 (11th Cir.2006)[11] (affirming summary judgment for
employer because plaintiff's comparators possessed specialized training and experience that
plaintiff did not have and, thus, plaintiff was not similarly situated to his alleged comparators);
Welch v. Mercer University, 304 Fed.Appx. 834 (11th Cir. 2008) ("Welch cannot show that two
white women who work in an entirely different academic department with entirely different
standards for promotion are valid comparators under Wilson, which requires that comparators be
"nearly identical." Further, since those other women are faculty members with teaching duties,
their responsibilities differ significantly from Welch's, and therefore they are not valid
comparators for Welch's disparate pay claim either.")   Material differences in rank and job
responsibilities can also preclude a co-employee from being a valid comparator.  See, e.g., Rioux
v. City of Atlanta, Ga., 520 F.3d 1269, 1281 (11th Cir. 2008).  Thus, a "comparator must be
nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by
the employer."  Wilson v. B/E Aerospace, Inc., 376 F.3d at 1091; Oliver v. National Beef

---

[11]  Unpublished opinions are not considered binding precedent, but may be cited as
persuasive authority. Rule 36-2 of the United States Court of Appeal for the Eleventh Circuit.
U.S.Ct. of App. 11th Cir. Rule 36-2.

Packing Co., LLC, 294 Fed.Appx. 455 (11th Cir. 2008) (affirming grant of summary judgment for employer where employee failed to identify a similarly situated coworker who was treated more favorably).

> The Eleventh Circuit has described the comparator analysis as follows:
>
> "In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." Id. at 735-36 (quotation, citation, and emphasis omitted). The plaintiff must show that he shared the same type of tasks as the comparators. Id. at 735. "A comparator is an employee similarly situated to the plaintiff in all relevant respects." Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1280 (11th Cir.2008) (internal quotations and alteration omitted). It is not always possible to find suitable comparators and we have noted that "if a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Id. at 1277 (quotation, alterations, and emphasis omitted).

Lee v. Mid-State Land & Timber Co., Inc., 285 Fed.Appx. 601, *4 (11th Cir. 2008).

Plaintiff argues[12] that her position and Mrs. Hand's position are comparable because both positions were classified as "singleton" positions, which are assigned unique duties.  Plaintiff further argues that both she and Mrs. Hand are "similarly situated" because both performed

_____

[12]  Plaintiff addresses the comparator issue in the following footnote in her opposition brief:

> Defendant contends that the positions of Hand and Kalonji are not comparable. Plaintiff disagrees as both positions were classified as "singleton" positions which are assigned unique duties. Both employees performed clerical duties in the Human Resource Department. Both employees were denied pay increases after the MGT study and filed grievances. Both employees were recommend by their supervisors for a promotion and/or classification change. Both employees' recommendation required the approval of Tate, Superintendent of Human Resources. (See Ex. 24, Ex. 27)

(Doc. 25, n.1)

clerical duties in the Human Resource Department, both were denied pay increases after the MGT study, both filed grievances, both were recommended by their supervisors for a promotion and/or classification change, and both employees' recommendation required the approval of Paul Tate, Superintendent of Human Resources. (Doc. 25 ) The court disagrees.  The fact that plaintiff and Mrs. Hand may have shared common experiences arising from their employment with defendant does not make Mrs. Hand a valid comparator.

In Sumerlin v. AmSouth Bank, 242 Fed.Appx. 687 (11th Cir. 2007) the Eleventh Circuit concluded that plaintiff failed to present a valid comparator based on the fact that she performed different tasks.  The Court opined, in pertinent part:

> An employee is similarly situated if she performs "the same type of tasks" as the plaintiff.  The plaintiff must establish that the employee is "similarly situated in all relevant respects."  The comparator employee "must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer."

> Hilton was not similarly situated to Sumerlin, because Hilton performed different tasks than Sumerlin. Sumerlin handled overtime and advance pay and entered data, such as name and address changes, but Hilton balanced payroll accounts and verified employment. Sumerlin even admitted that all of the payroll representatives "had different duties." Because the two were not similarly situated, Sumerlin's lower wage was not circumstantial evidence of discrimination.

Id. at *3 (internal citations omitted)

The record reflects that the majority of Mrs. Hand's duties involve interaction with employees.  Conversely, Ms. Kaljoni's position requires that the bulk of her time be spent in data entry.   Specifically, Mrs. Hand's combined duties of Legal Secretary and Retirement Clerk include: (1) determining retirement/disability eligibility; (2) evaluating issues affecting 401Ks, rollover pensions and retirement accounts; (3) determining the amount of service time and (4)

interacting with School Board attorneys, employees, the Superintendent and members of the
School Board.  Mrs. Hand's supervisor is the School Superintendent.[13]  In contrast, the evidence
reflects that Ms. Kalonji works primarily with data entry for certified employees and is under the
direct supervision of the Human Resources Director.

Plaintiff cannot survive defendant's motion for summary judgment by showing that a
white employee with a totally different job description and job duties was reclassified.  Mrs.
Hand is  not sufficiently similarly situated to be a valid comparator for Ms. Kaljoni.  See Rioux,
520 F.3d at 1280 ("A comparator is an employee similarly situated to the plaintiff in all relevant
respects.")  Moreover, there is simply no evidence that the defendant's decision not to reclassify
plaintiff's position was based on her race.  See  Holifield, 115 F.3d at 1563 ("[S]ummary
judgment is appropriate where no other evidence of discrimination is present."); see also Rioux,
520 F. 3d at 1277 (plaintiff's evidence was found to be sufficient, despite lack of comparative
evidence, because his replacement was outside of his protected class, and he had other
circumstantial evidence of discrimination)  As such, defendant's motion for summary judgment is
due to be granted.


V.    Conclusion

In the final analysis, plaintiff has failed to establish that she was treated less favorably
than similarly-situated employees outside her protected class.  Accordingly, defendant's motion

---

[13]  Defendant concedes that the Retirement Clerk position does fall under the Human
Resources Department, but notes that Mrs. Hand's position as Legal Secretary does not, and, it
appears undisputed that Hand's direct supervisor since 2000 has been the Superintendent.

for summary judgment as to all claims alleged in the complaint is GRANTED.[14]

DONE this the 19th day of May 2009.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[14]  The pretrial conference, scheduled for June 11, 2009 is CANCELLED.

15